This is Seanna Barnett v. Sheriff of Seminole County. Thomas Poulton is here for the Sheriff. Kendra Dawn Presswood is here for Barnett. Mr. Poulton, you may begin when you're ready. Good morning, Mr. President and members of the public counsel. My name is Tom Poulton. I'm on behalf of Seminole County Sheriff Lima. In this case, we ask that the court reverse the July 13, 2021, summary judgment order by the district court on two grounds. First, the entry of the injunction. And second, the finding of liability and order for a trial on damages only on the merits of the underlying claim. Let me ask you a question with regards to the permanent injunction. My understanding is that the district court judge solely made the determination based on the fact that you had noticed in the joint pretrial stipulation, even though in the joint pretrial stipulation, you specifically disputed that they were entitled to that relief because they had never sought it in the original complaint or in the amended complaint. And then in addition to that, we feel that even if that were some sort of notice that it's generically an issue out in the case, three years later, there's a summary judgment motion pending on that liability. Well, and again, the district court judge never went through any of the four factors that you would need for a permanent injunction. Well, you know, to us it's clear, you know, notice and opportunity to be heard have to be meaningful. And we don't think we got either a notice or an opportunity to be heard. And when we pointed out, for example, that the policy had in the interim changed after the Supreme Court turned down review of Barnett 2, we were met with criticism that we hadn't brought that up, even though it wasn't an issue. The relief sought in the summary judgment motion was a finding of liability on the underlying claim. And then let me ask you a question because this was confusing to me. When this case went back after the original panel issued its decision and then the mandate issued saying that it was remanding it back on the one count for trial. This is Barnett 2? Yes, for trial. A summary judgment motion is filed. My understanding is that what the motion for summary judgment in essence said that the district court judge had to determine liability and that there would then be a trial on damages. Yes, Your Honor. The district court did that. But Barnett 2 did not say trial on damages. I mean, maybe it's missing. It's in invisible ink. I don't know. No, I'd like to read three sentences from that opinion if I might. A jury could find that the officers at the Seminole County Jail obtained information showing beyond reasonable doubt that there was no longer probable cause to continue holding Ms. Barnett. We reversed the district court's grant of summary judgment on Ms. Barnett's Fourth Amendment detention claim against the sheriff under Monell and remanded for a trial on that claim. And then finally, on this record, Ms. Barnett's detention claim against the sheriff must be decided by a jury. The record is exactly the same as it was in Barnett 2. There's still evidence that is capable of two different conclusions. The plaintiff would argue, you thought I was intoxicated by alcohol. Zero. You no longer have probable cause to hold. I understand that. But I just want to make sure that I understood the record, which is that the district court judge was told, you can enter summary judgment on liability and then a trial on damages. Well, that's what I think the plaintiff wanted. We disagreed. No, I understand you disagreed. And I think that the district court decided in favor of the plaintiff, which, I mean, even if you set aside Barnett 2, which on this record we have to have a jury trial, it's the same record. And there is evidence from plaintiff's own experts saying that the signs of intoxication that the deputy found were capable of explanation by either alcohol or drugs. The plaintiff can certainly make an argument at a trial on liability that when her blood alcohol result or blood alcohol contract result was triple zero, that probable cause dissipated beyond a reasonable doubt. But it's not conclusive to the point that summary judgment could be entered in her favor. I would point out in addition to that, that this has to, that evidence, that same evidence, it's the same record as it was then, has to be viewed in a light most favorable to the sheriff as the non-moving party. So you look at the plaintiff's own experts saying it's possible that it could be explained by drug use. You note the fact that the breath technician says that the signs and symptoms can be the same. The arresting deputy checked yes for alcohol and you, unknown, for drugs. That's also in Barnett too. So certainly the evidence is capable of the conclusion that probable cause did not dissipate beyond reasonable doubt and that's what the trial is supposed to be about. I'd like to address, since we've gone into that, I'd like to address the jurisdictional issue that's been raised by the plaintiff with regard to the finding of liability because there's no final judgment in respect to that. But our position is that it's inextricably intertwined with the injunction. For several reasons. First, it's the same facts and the same law. And that's the definition of intertwined in the case law. But secondly, standing. If the policy was not unconstitutionally applied to Ms. Barnett in the first instance, meaning she wasn't held at probable cause and dissipated beyond reasonable doubt, then she doesn't have standing to seek the injunction. There has to be a finding of liability that the policy was applied to her unconstitutionally before she could get the injunction. So to us, it's inextricably intertwined. And then, of course, there's the point I think Your Honor is raising. Certainly we take this position that the district court order is contrary to the mandate of this court, saying that on this record, there has to be a jury trial. And as I've quoted other parts of that opinion, saying there needs to be a trial on that issue. Because the record is exactly the same. And it must be viewed in a light most favorable to the sheriff. Because if the plaintiff was the move-in, the court should hold that the court erred in entering summary judgment and, of course, erred in grant of the injunction where there was no notice to the sheriff or opportunity to be heard. And then when you did file a motion for reconsideration, again, no analysis of any of the four factors and only you had notice in the joint pretrial stipulation that you disputed. To us, it's clear the injunction should be reversed. And if the court finds its jurisdiction over the other, if we don't, there's going to be a Barnett 4. And I might point out, Your Honor, we would request that if the court does reverse this, that there be clear direction there be a jury trial on this issue. Because the district court judge on this case has passed away in the interim and the case has been reassigned. And given the evolution of this, Barnett 1 on a qualified immunity appeal, Barnett 2 post-trial, and now Barnett 3, I think it would be helpful to the district court if there were a clear instruction based on this record, jury trial. What's the status of the whole policy? It's gone, right? It's changed. As we read Barnett 2, the issue was a lack of discretion on the part of the jail officials. For example, Ms. But what Ms. Barnett was complaining about is no longer in effect, right? It's been changed. We can have an earnest debate about that. General counsel for the sheriff's office would love to come down to the district court and talk to the district court about what would you like to see us put into our policy. I mean, I think she said that in her affidavit. We'd be more than happy to do that. It's a public record. And, you know, we didn't even get that chance. Yeah. So I guess I'm trying to figure out whether or not this matter with regard to the whole policy itself for which the court issued a permanent injunction is moot. Well, I have two things, Your Honor. First, a philosophical one and then a practical one. Philosophically, having a federal district court order a local government official to stop enforcing a policy without an opportunity to be heard is fundamentally objectionable, right? Second, practically speaking, in the court below, the plaintiff is using the entry of that injunction to seek an award of attorney's fees under Section 19.8 saying we're a prevailing party because we got this injunction, whether we win or lose the merits claim. So there are consequences to the entry of that injunction beyond, you know, the simple entry of an injunction against a policy that no longer exists. But to answer Judge Wilson's question, the policy, the initial policy that was at issue has been modified or changed somehow. Yes. Yes, to meet Barnett 2. And it had been changed before the injunction was issued, correct? Yes. It was after the Supreme Court denied certiorari review. I think it was two months later, the general counsel told folks at the jail, okay, now we're going to build in some elements of discretion here. For example, somebody like Ms. Barnett, you think it's alcohol, she blows triple zero, you know, reexamine the situation, has probable cause dissipated beyond a reasonable doubt. I think they acted responsibly in that respect. And, you know, just the whole situation of the entry of the injunction without an opportunity to express this to the district court and explain what's going on, and then to have the entry of judgment on liability when the record hasn't changed and there's supposed to be a jury trial. That's just fundamentally mistaken. Thank you. Thank you, Mr. Poulton. Ms. Presswood. Good morning, Your Honors. I'm Kendra Presswood and I have the honor of representing Shawna Barnett in this third appeal in this case. We believe that both the summary judgment and the permanent injunction were properly entered. Well, counsel, let me ask you a question. How is it proper to enter? Well, let's start first with Barnett 2. I guess it's Barnett 2 or Barnett 3, I don't remember. But the 2020 decision from this Court that specifically says, and by the way, there's a difference between a holding, but decisions from this Court don't just contain holdings. They also order the lower court, the inferior court, to do things. This is a very specific order, which is we reverse the district court's grant of summary judgment on Ms. Barnett's Fourth Amendment detention claim against the sheriff under Monell and remand for a trial on that claim. That's a very specific order and direction. I mean, we can do opinions that say, and we remand for proceedings consistent with this opinion. If we had done a decision that said, we remand and reverse for entry of judgment in favor of Party A, do you believe that the district court judge could have decided to reopen discovery? I don't think in that case the judge could reopen discovery, but the fact of the matter is . . . Do you think that they could do anything other than enter judgment in favor of Party A? I can't think of a circumstance in which they could, but that is not what happened here. What is not clear here, it says remand for a trial on that claim. Where does it say that it would be appropriate then to go and enter a motion for summary judgment on liability and then a trial on damages? The only issue the court was addressing in Barnett 2 was whether there could be a proper summary judgment entered against Barnett, which is a completely . . . Then this court would have said, and we reverse and remand for entry of judgment in favor of Barnett, because we have done that in the past. That wasn't an issue in Barnett 2, though. There was no request that the court grant summary judgment in favor of Barnett. The only issue was whether summary judgment was improperly granted against her. And if you look at the record, there is no issue of material fact. In Barnett 2, the district court entered a judgment at the very beginning of the case just saying, this policy isn't facially unconstitutional. Nothing else was even argued about that or decided in the case, and it wasn't argued in Barnett 2. And this court's president says that the issue of whether summary judgment is appropriate for one party is completely different from the issue of whether it's appropriate . . . Where was the notice to the sheriff of the fact that you were seeking a permanent injunction? In the complaint or in the amended complaint? First of all, the complaint and the amended complaint said we were seeking all appropriate relief, and certainly injunctions and declaratory relief are appropriate . . . Did you at any moment in time file a motion that discussed the four factors that would lead for a district court judge to enter a permanent injunction? No, we did not do that. Is it not improper? Because even under Rule 65 of the Federal Rules of Civil Procedures, which talks about a preliminary injunction, preliminary injunction and permanent injunction have the same factors. But it is very clear that a party has to be on notice, and you either have to have a complaint, a verified complaint, or a motion, and then there has to be findings of fact and a determination made by the district court judge as to the four factors. So I don't even see in what world we're in where a district court judge enters a permanent injunction and does not even have an analysis on the four factors in order to enter a permanent injunction. Well, Your Honor, respectfully, the sheriff didn't even argue that there were not any of the factors met in their motion for reconsideration. They argued that they were not on notice and given the opportunity to be heard. Then they argued substantively that it was moot. They didn't argue that any of the factors had not been met. If they thought the factors hadn't been met, I'm sure they would have argued that in their motion for reconsideration, but that is not what they did. And they didn't argue it in this appeal either. So they had notice from the complaint. They had notice from the amended complaint. They had notice from the pretrial stipulation. The joint pretrial stipulation specifically says the sheriff disagrees and is of the view that in the absence of specific requests for injunctive relief, general requests for relief in a complaint is insufficient to support. So the question I have is then the district court judge doesn't even have an analysis as to what their objection is. They said that they disagreed. That didn't mean they didn't have notice. They obviously had notice. Notice is something, but notice and an opportunity to be heard. They did not have an opportunity to be heard. You filed no motion for permanent injunction. You still have the burden to show that you're entitled to a permanent injunction, and you have to satisfy those burdens. And there are four factors. How do you have the right to a permanent injunction when you're seeking monetary damages and adequate relief at law? There's Monell provides, which is the case that governs all of these 1983 actions. It provides that there's monetary relief, injunctive relief, and declaratory relief. The court granted declaratory relief, and they haven't even challenged that. That's the same notice issue that they're claiming they don't have notice of here, which I maintain they do from both complaints, the stipulation, the Monell case, and six years of litigation. They were on notice, and they had the opportunity to be heard when they filed their motion for reconsideration. And again, they didn't argue that any of the factors for a permanent injunction were not met. They just claimed the issue was moot, which they don't claim on appeal because it is not moot, obviously. And with respect to the – I think you were asking a summary judgment issue, too, but I don't recall what it was at this point. But there are no issues of material fact whatsoever. And it's remarkable that the sheriff is here arguing that because they stipulated before the trial court that the DUI hold policy required that Barnett be held for at least eight hours, period. That was what they stipulated, too, in the court. Then in Barnett, too, they stipulated in their brief, they conceded that he had an official policy practice or custom requiring that DUI arrestees be detained for a minimum of eight hours. This court noted that they conceded it in Barnett, too. There was no issue on that fact. No, but the sheriff has indicated that the policy changed later once the Supreme Court denied cert in Barnett, too. But surely you're not suggesting that notice and opportunity to be heard are satisfied if the district court considers a motion for reconsideration, because we all know that that's a higher hurdle to seek a motion for reconsideration, that you've got to jump over. Surely, potentially listening to arguments raised at that point in time doesn't satisfy the notice and opportunity to be heard. Well, if they had argued that one or more of the elements had not been met, then I think that would have met the motion for reconsideration standard. If the Court agreed that there wasn't, he missed one of the elements that didn't exist, that would have met the reconsideration standard. I mean, that was something new that they hadn't argued yet, for one thing, and it was an error of law if that was the case. He would have reconsidered that, but they didn't argue that. I can't find any authority relating to a district judge entering a permanent injunction sua sponte. I didn't find any authority either, and I also didn't find any authority saying that you have to put in your complaint specifically that you want an injunction if you prevail or that you want declaratory relief if you prevail. I found cases to the contrary, but they were all district court cases, which are cited in the ruling. But to Judge Lagoa's point, we're not in a situation here where you, in a complaint, said all appropriate relief and then actually moved for injunctive relief, arguing the four factors and why you're entitled to it. That's a wholly different situation. We're not arguing, and we wouldn't be, I mean, maybe we would be arguing about whether that was appropriately noticed in the complaint, but once you filed the motion in the first instance, you know, then we start having that battle, but that's not this case. Right, and typically a motion for injunctive relief would, or any kind of equitable relief in this kind of case, I would have filed after the summary judgment liability finding, and I frankly would have preferred that because then we might have cut down on one appeal before this court because no matter what happens now, I'm sure there's going to be another appeal before the court. So I would prefer it that way, but my point is that there isn't any abuse of discretion by the court because they had the chance to make their arguments. They made their arguments. They didn't make the arguments about the four factors required. They didn't make them in this appeal, so they weighed that issue. They argued about the court having entered an injunction when they changed their policy, saying it was moot, which all the case law says is not the case. When you fight something for six years in litigation and then you finally change your policy, which, by the way, doesn't even really comply with Barnett II or the Constitution, that you can't say that now it's moot because we changed it after the Eleventh Circuit Court of Appeal and the United States Supreme Court didn't agree with us. That is not voluntary compliance. So the permanent injunction was appropriate because it wasn't moot. And I understand that you would have preferred to do the motion, but like I said, the plaintiff bears the burden of proving entitlement to a permanent injunction, right? And that's why it's sort of strange that this is a sua sponte entry by the district court. And we have cases from the old Fifth and the Eleventh Circuit, but we also have cases from the old Fifth that we're bound by that talk about a permanent injunction should follow a jury trial or a bench trial with findings of fact and conclusions of law sufficiently detailed and exact to indicate the factual basis for the district court's ultimate conclusion. And we don't have that here. Well, I think the district court's order was pretty specific about why it was finding liability and why the injunction is specific. It says, like, not just you can't enforce this policy, it gives specific guidance on what is required, what is, if someone blows the whistle. But we have to have some analysis from a district court as to the four factors that entitle someone to a permanent injunction. And here there was already a change. Whether or not the change would have been satisfactory in terms of time period, I don't know. I'm not a finder of fact. It's just that we're reviewing and we have nothing to review, and that's problematic. So where are we? Let's say that we decide that the court erred in denying the sheriff's motion for reconsideration on the permanent injunction. Then it goes back. What happens now? There's going to be a reconsideration of whether or not the permanent injunction should be entered. Yes. Okay. All right. There are no further questions. All right.  Mr. Poulton, you've reserved some time for rebuttal. Yes, Your Honor. I'd like to make a few points. First, I'd like to address your question about what happens next. In addition to the reconsideration of the injunction, do you count the changes, for example? I'll say that again. I didn't hear you. Well, you asked counsel where are we. What happens next if we have a reversal of the injunction? And I mean, I think counsel's correct. We have a procedure. Examine the new policy, for example. We'll see whether or not it meets muster. But in addition to that, there needs to be — And if it doesn't, the court could enter a permanent injunction again. If that were necessary. But I think that it's pretty clear from the filing we did on rehearing, when we first got wind of an injunction being entered, that the Sheriff's Office is more than happy to sit down and talk about how to make a policy that works. To meet this question of does probable cause dissipate beyond a reasonable doubt. That leads me back to your question. I think there still has to be a trial on the question of whether Ms. Barnett was held past probable cause dissipated beyond a reasonable doubt. But as far as the constitutionality of the sheriff's whole policy, if this case goes back, then that would be for the district court's consideration, right? First, yes. Okay. But I do think that the court has to first determine, the after trial, whether Ms. Barnett was unconstitutionally held under that policy. Okay. Because if she wasn't, she doesn't have standing to seek the injunction in the first place. To that end, let me ask you one question. Other than the evidence surrounding Barnett's arrest, was there anything else indicating continued impairment at the jail? Or are we just focused on the arrest itself? Well, I don't know that you can necessarily segment it out between the arrest at 4 a.m. and the breathalyzer result at 5 a.m. And I did want to make this point. The plaintiff's expert testified that the nystagmus testified to by the deputy could be caused by either drugs or alcohol. The deputy testified that she believed it was alcohol but could not rule out drugs and indicated that in her arrest paperwork at the time. She asked for a urine sample for that very purpose. Let me focus my question. So we have the stop. We have the field sobriety tests. And we have the breathalyzer and then the urine test. The urine test has come back for about a month. But it's taken. So I'm just trying to make sure that I understand the entirety of the record on this issue. Is there anything else other than what I've listed that needs to be considered in support of the sheriff's position of a potential impairment? Oh, so an impairment? You have the trial testimony of the plaintiff and defense experts all saying that the things that were raised by the deputy could be explained by either drugs or alcohol. No, and I understand that. I'm just trying to look at what are you pointing to. Like there's nothing that's happening while she's sitting in the jail cell. You're not saying there's anything, any behavior that was indicative of impairment? No. I just want to make sure I have captured the universe. You have. Okay. It's all a question of how does a jury think this works out? Has probable cause dissipated beyond reasonable doubt? We've got arguments that it didn't. They have rare arguments that it did. And I'm just trying to make sure I know all of your arguments on potential impairment. And I would also add that the one, yes, but I do think it's imperative to make the point that there has been one trial already and the jury found there was probable cause for the arrest. And at the end of this court, Barnett too said we're leaving that alone. So the arrest itself is founded on probable cause. The question is whether or not it dissipated. And the burden on that, by the way, to prove it dissipated beyond a reasonable doubt would be on the plaintiff, not on the defendant to show probable cause continued because she's the one making the claim that she continued to be unreasonably seized. It's like an overdetention type claim. So the burden would be on her to meet that standard. And, you know, again, given this court's instruction, there's got to be a trial. And the court's repeated reference to a jury needs to decide this issue. Was she held beyond reasonable doubt? And that leads me to my final point. She says well—I'm sorry, opposing counsel says that the DUI hold policy was stipulated to. That's true, but that's not the question. It's not a question of whether there was a DUI hold policy of eight hours. The question is whether or not she was unconstitutionally held as a result of that policy because probable cause had dissipated beyond a reasonable doubt. If probable cause did not dissipate beyond a reasonable doubt, she's not unconstitutionally held to begin with. Your Honors, thank you for your time. Appreciate it. All right. Thank you, counsel. The court will be in recess for 15 minutes. All rise.